UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

NADIA ROHR and BAYLEE HUFFMAN,

    *Plaintiffs*,

v.

CITY OF DETROIT, a political subdivision of the State of Michigan, DETROIT POLICE DEPARTMENT, JOHN DOE POLICE OFFICER 1, in their individual and official capacities, and JOHN DOE POLICE OFFICERS, in their individual and official capacities,

    *Defendants*.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, NADIA ROHR and BAYLEE HUFFMAN, by and through their attorneys, EXCOLO LAW, PLLC, for their Complaint against Defendants, respectfully alleges the following:

## JURISDICTION AND VENUE

1.    This is a civil action for money damages brought pursuant to 42 U.S.C. § 1983, and the First and Fourth Amendments to the United States Constitution.

2.    This Court has original jurisdiction over Plaintiffs' claims based upon the laws of the United States pursuant to 28 U.S.C. § 1331.

1

3. The events that gave rise to this lawsuit took place at and around Selden and Second Street in Downtown Detroit, within the jurisdiction of the United States Eastern District of Michigan.

4. Venue is appropriate in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) since the Individual Defendants are employees of the Detroit Police Department, and the and the acts providing the legal basis for this Complaint occurred in the City of Detroit, County of Wayne, State of Michigan.

## PARTIES

5. Plaintiff, Nadia Rohr, ("Rohr") at all relevant times herein was a resident of Goodells, County of St. Clair, the State of Michigan, and a citizen of the United States.

6. Plaintiff, Baylee Huffman, ("Huffman") at all relevant times herein was a resident of Port Huron, County of St. Clair, the State of Michigan, and a citizen of the United States.

7. Defendant, City of Detroit, ("Detroit") is a political subdivision of the State of Michigan, and enacted the complained of policies followed by the individual defendants as outlined herein. Alternatively, Defendant, Detroit Police Department, ("DPD") is a separate entity from Detroit and has the authority to enact its own policies and did in fact enact the complained of policies followed by the individual defendants as outlined herein.

8. At all pertinent times, Detroit and/or DPD had an obligation to enact and enforce lawful and constitutional policies, procedures, protocols, and customs for all employees, agents, and contractors, to follow, particularly those who are considered to be law enforcement, such as the individually named defendants. Further, Detroit and/or DPD had the affirmative duty to train and supervise all employees, agents, and contractors, including the individually named defendants, specifically to ensure that people such as Plaintiffs don't have their rights violated by people such as the individually named defendants.

9. Contrary to and in violation of this obligation, Detroit and/or DPD (jointly "The City") violated this legal obligation by enacting unconstitutional policies, procedures, customs, and protocols, which not only demonstrated deliberate indifference to Plaintiffs' constitutional rights, but also directly caused the herein described violations of Plaintiff's constitutional rights.

10. Defendant, John Doe Police Officer 1, ("Defendant John Doe Officer 1") at all relevant times herein, was a law enforcement officer employed by DPD. Defendant Officer, at all relevant times herein, was acting in their individual and official capacities under color of state law. Defendant John Doe Officer 1 cannot be identified at this time, but will be identified throughout the course of discovery.

11. Defendants, John Doe Police Officers, ("Defendant John Doe Officers") at all relevant times herein, were law enforcement officers employed by

DPD. Defendant Officers, at all times relevant herein, were acting in their individual and official capacities under color of state law. Defendant John Doe Officers cannot be fully identified at this time, but will be identified throughout the course of discovery.

12. All herein described acts of the individual Defendants were done wantonly, intentionally, knowingly, maliciously, recklessly, unreasonably, and/or with gross negligence and/or deliberate indifference.

## FACTUAL BACKGROUND

13. Plaintiffs Huffman and Rohr attended a protest on Saturday, May 30, 2020.

14. Protests of this nature were occurring and continued to occur across the country in response to rampant unchecked police brutality and misconduct.

15. Plaintiff Huffman and Plaintiff Rohr were, at all times relevant to this Complaint, exercising their First Amendment right to peaceful protest.

16. Plaintiff Huffman and Plaintiff Rohr were handing out water and granola bars to protesters marching near Selden and Second Street in Detroit, all of which also constitutes protected conduct.

17. Plaintiff Huffman and Plaintiff Rohr, at all times relevant to this Complaint, were unarmed and behaved in a non-threatening manner.

18. During the protest, Defendant John Doe Officers were often and without any provocation using tear gas on innocent protesters and even on some children.

19. Plaintiff Huffman and Plaintiff Rohr provided water and assistance to protesters who were tear-gassed by Defendant John Doe Officers

20. Plaintiffs Huffman and Rohr arrived at the protest at around 10:00 PM.

21. At or around 12:30am on Sunday, May 31, 2020, the DPD formed a police line in front of a group of protesters.

22. Plaintiffs, were acting non-threateningly at the time of the incident, as they had been acting at all times prior to this incident.

23. Plaintiff Rohr was standing close to the line of Defendant John Doe Officers.

24. Upon information and belief, Plaintiff Rohr made eye contact with a Defendant John Doe Officer. Plaintiff Rohr then turned her head.

25. Immediately after turning her head, Plaintiff Rohr was struck by an object, believed to be a rubber bullet fired by Defendant John Doe Officer 1.

26. The rubber bullet struck the right side of Plaintiff Rohr's head and fractured her skull, exposing brain matter.

27. Plaintiff Rohr fell to the ground immediately, bleeding profusely.

28. Plaintiff Rohr faded in and out of consciousness.

29. Plaintiff Huffman, along with several other protesters, began screaming for medical assistance from Defendant John Doe Officers, shouting that a girl had a head injury and could die.

30. Defendant John Doe Officers did nothing to assist Plaintiff Rohr.

31. Plaintiff Huffman, along with the help of other protesters, managed to drag Plaintiff Rohr behind a dumpster while Defendant John Doe Officers watched and did nothing to assist.

32. Plaintiff Huffman tied a tourniquet around Plaintiff Rohr's wound in attempt to stop the incessant bleeding, fearing for Rohr's life.

33. Defendant John Doe Officers continued to watch as Plaintiff Huffman and Plaintiff Rohr as they struggled to walk the full two miles back to their car while Plaintiff Rohr continued to bleed profusely.

34. Plaintiff Rohr was taken to Henry Ford Hospital by Plaintiff Huffman for emergency care for her injuries.

35. Upon admission, Plaintiff Rohr was diagnosed with a two skull fractures, a concussion, and a subdural hematoma.

36. Plaintiff Rohr's brain matter was exposed. Rohr's wounds were so large that they could not be stapled – she received 9 sutures.

37. Plaintiff Rohr has extensive bruising on the side of her head, just behind her right ear.

38. As a direct and proximate result of these injuries, Plaintiff Rohr struggles with daily pain and memory loss. She will require extensive therapy to recover.

39. While at Henry Ford Hospital, a DPD officer was present and working with hospital security. The officer refused to provide her badge number when originally requested by Plaintiff Huffman.

40. As a direct and proximate result of these injuries, Plaintiff Huffman and Plaintiff Rohr suffer damages for severe emotional, physical, and mental anguish, pain, and injuries.

41. Plaintiffs now seek compensatory and punitive damages in addition to reasonable attorney fees.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (FIRST AMENDMENT – CHILLING EFFECT)

*(Plaintiffs Against All Defendants)*

42. Plaintiffs incorporate herein all prior allegations.

43. At all times relevant, Plaintiffs were engaged in Constitutionally protected conduct of peaceful protest and providing assistance to peaceful protesters.

44. By shooting Plaintiff Rohr with a rubber bullet and failing to care for her, Defendants intentionally, knowingly, maliciously, recklessly, and/or gross negligently, without any lawful basis, created an objective "chilling effect," which

effectively deterred both Plaintiffs and other protesters from exercising their First Amendment rights to free speech and peaceful protest.

45. Alternatively, by using tear gas and shooting rubber bullets at Plaintiffs, other protesters, and children, Defendants intentionally, knowingly, maliciously, recklessly, and/or gross negligently, without any lawful basis, created an objective "chilling effect," which effectively deterred Plaintiffs and other protesters from exercising their First Amendment right to peacefully protest.

46. These adverse acts by the Defendants were done specifically to deter Plaintiffs from exercising their First Amendment rights to free speech and peaceful protest.

47. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (FIRST AMENDMENT – RETALIATION)

(*Rohr Against All Defendants*)

48. Plaintiffs incorporate herein all prior allegations.

49. At all times relevant, Plaintiff Rohr was engaging in constitutionally protected conduct of peaceful protest and provision of assistance to other peaceful protesters.

50. In retaliation to this protected conduct, Defendant John Doe Officer 1 wantonly, intentionally, knowingly, maliciously, recklessly, unreasonably, and/or with gross negligence and/or deliberate indifference shot a rubber bullet or some other object that hit Rohr in the head.

51. Such retaliatory action would serve as a deterrent to a person of ordinary firmness from engaging in such protected conduct.

52. The retaliation was motivated at least in part by the protected conduct.

53. There was a causal connection between Plaintiff's constitutionally protected conduct and the adverse retaliatory actions taken by the Defendants against Plaintiff.

54. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs' rights were severely harmed.

### COUNT III
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (FOURTH AMENDMENT – EXCESSIVE FORCE)

*(Rohr Against All Defendants)*

55. Plaintiffs incorporate herein all prior allegations.

56. Defendants, acting under color of law, violated Plaintiffs' constitutionally protected rights including Plaintiff Rohr's right to be free from excessive force.

57. Defendant Officer John Doe 1, intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently shot a rubber bullet that struck Rohr and nearly killed her, without any lawful basis.

58. Defendant Officer John Doe 1 did this as Rohr stood still, unarmed, and in an objectively unthreatening manner.

59. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was severely harmed.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (FAILURE TO INTERVENE)

*(Plaintiffs Against All Defendants)*

60. Plaintiffs incorporate herein all prior allegations.

61. Under color of law, Defendants were working in concert with one another to deter Plaintiff Huffman and Plaintiff Rohr from engaging in constitutionally protected activity.

62. Even if not all Defendant John Doe Officers acted in concert, none of the Defendant John Doe Officers intervened to stop the unlawful conduct of one or more of the acting Defendant John Doe officer(s) despite having ample time and opportunity to do so. Each John Doe:

   a. Failed to stop other Defendant John Doe Officers, like John Doe Officer 1, from engaging in the unlawful conduct described herein; and

    b. Failed to intervene in all other officer's refusal to provide care to Plaintiff Rohr when she was clearly injured from the shot fired to her skull fired by Defendant John Doe Officer 1 and Plaintiff Huffman (as well as other protesters) screamed and clearly informed them that she needed medical attention.

63. Defendant John Doe Officers had the opportunity and means to intervene but affirmatively chose not to intervene to blatant constitutional violations.

64. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were severely harmed.

**COUNT V**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(FAILURE TO PROVIDE MEDICAL TREATMENT)**

*(Rohr Against All Defendants)*

65. Plaintiffs incorporate herein all prior allegations.

66. As it outlined in great detail herein, all Defendants had the obligation and opportunity to provide medical care, based on each defendant's own training, and yet nobody provided any treatment whatsoever, or even called for medical assistance. They chose instead to let Rohr suffer, as some form of cruel vigilante street justice.

67. All Defendants knew Rohr needed medical treatment as a result of Defendant John Doe 1's use of excessive, arbitrary, and conscience shocking force.

Plaintiff Huffman and other protestors screamed for medical help for Plaintiff Rohr to no avail.

68. Because of Defendants' actions and inaction, Rohr suffered harm.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (CONSPIRACY)

*(Plaintiffs Against All Defendants)*

69. Plaintiffs incorporate herein all prior allegations.

70. The name Defendants through their conduct described herein conspired with one another to commit each listed count to deter Plaintiffs from engaging in constitutionally protected activity.

71. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs' rights were severely harmed and rights violated as discussed herein.

72. Specifically, and just as an example, all John Doe Officers agreed to march in riot gear, use pepper spray and rubber bullets unlawfully, and then leave them their victims injured without calling for medical help or providing any medical assistance.

73. Plaintiffs were harmed as a result.

## COUNT VII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (ARBITRARY CONSCIENCE-SHOCKING CONDUCT)

### *(Plaintiffs Against All Defendants)*

74. Plaintiffs incorporate herein all prior allegations.

75. A state or local official is liable under 42 U.S.C. § 1983 if the acts and conduct that perpetrated a violation of a person's rights were arbitrary or conscience shocking.

76. At all times relevant, Plaintiffs had a clearly established right to be free from conduct by law enforcement that is arbitrary or conscience shocking.

77. Defendant John Doe Officers exhibited conscience shocking behavior when they conspired to violate the rights of individuals present at a peaceful protest, like Plaintiffs Rohr and Huffman. Further conscience-shocking behavior exhibited by Defendant John Doe Officers included lawlessly shooting rubber bullets and tear gas at peaceful protestors to chill their protected political speech, and then actively ignoring the injuries sustained by peaceful protestors like Plaintiff Rohr at the hands of Defendant John Doe Officer 1.

78. Defendant John Doe Officers conduct as described herein is arbitrary and conscience shocking as Defendants had no reasonable or lawful basis to use force and then refuse aid to peaceful protestors.

79. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages for severe emotional, physical, and mental anguish, pain, and injuries.

### *MONELL* LIABILTY AGAINST THE CITY OF DETROIT

80. Plaintiffs incorporate herein all prior allegations.

81. A municipality is liable under 42 U.S.C. § 1983 if the alleged violations are attributable to its own policies, practices, and customs.

82. At all times relevant to this Complaint, The City acted with deliberate indifference to Plaintiff's Constitutional rights by maintaining policies, practices, and customs that condoned and fostered Defendant John Doe Officers' conduct. Specifically, this City maintained a policy that permitted Defendant John Doe Officers to use unreasonable and excessive force on unarmed, nonthreatening, peaceful political protestors.

83. In the alternative and at all times relevant to this complaint, The City did not in fact have such a policy in place, but failed to properly train and supervise Defendant John Doe Officers, thereby demonstrating deliberate indifference to Plaintiffs' rights.

84. At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or

customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City of Detroit, including the failure:

    a. To adequately supervise and train its officers and agents, including the individual Defendants and especially Defendant Officer John Doe 1, the officer responsible for shooting Plaintiff Rohr, thereby failing to adequately discourage further Constitutional violations on the part of its officers; and

    b. To properly and adequately monitor and discipline its officers, including individual Defendants; and

    c. To properly and adequately investigating citizen complaints of police misconduct and instead, acts of misconduct were tolerated by Defendant City of Detroit.

    85. The City failed to properly train its police officers on the proper standard for monitoring peaceful protests and the proper standard for using force against a criminal suspect.

    86. The City's failure to adequately supervise and train its police officers on the proper procedures for monitoring peaceful protests and the proper standard for using force against a criminal suspect caused Defendant John Doe Officers to violate Plaintiffs' Constitutional rights.

    87. Defendant City of Detroit has acted with deliberate indifference to the constitutional rights of the Plaintiffs. As a direct and proximate result of the acts as

stated herein by each of the Defendants, each of the Plaintiffs' constitutional rights have been violated.

88. As a proximate result of Defendants illegal and unconstitutional acts, Plaintiffs suffered physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

89. As the first alternate basis for liability against Defendant City of Detroit, the policy maker for Defendants, the mayor, or someone else in a policy making position, delegated full authority and/or empowered the individual Defendants.

90. That delegation of authority by the actual policy maker of Defendant City of Detroit placed the individual Defendants in a policy making position, and the acts of the individual Defendants may fairly be said to be those of the municipality.

91. Those acts therefore subject Defendant City of Detroit to liability for the constitutional violations of the individual Defendants.

92. Defendant City of Detroit directly caused the constitutional violations suffered by Plaintiffs, and is liable for the damages caused as a result of the conduct of the individual Defendants. The conduct of the individual Defendant officers was a direct consequence of the policies and practices of Defendant City of Detroit.

93. Upon information and belief, the City of Detroit has a de facto unwritten policy, custom, or procedure in place wherein its officers abuse people who exercise their rights in ways deemed offensive by officers.

94. Based upon this policy, Plaintiff Rohr was shot in the head with a rubber bullet and then left in the street with a fractured skull and blood coming from her head.

95. Upon information and belief, the defendants were not subjected to any disciplinary action despite their unlawful actions.

96. The City of Detroit does nothing meaningful to train, supervise, discipline, or control its officers to prevent the actions taken by the officers as described herein.

97. This failure to supervise, discipline, or control its officers demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this lawsuit.

98. Further the de facto unwritten policy, procedure, or custom, described herein, demonstrates deliberate indifference to the constitutional rights of the plaintiffs and is directly responsible for the individual defendants acting the way they did as outlined in this complaint.

99. Defendant City of Detroit's supervision of the defendant officers, was deficient as it to relates to excessive force, refusal to treat, unlawful arrests, and unlawful seizures and searches of cell phones. Defendant City of Detroit, with clear deliberate indifference to Plaintiffs and others, has a demonstrable pattern and unwritten policy in place to ignore and thereby encourage unlawful and unconstitutional actions of its officers, including:

   a. Threatening to seize peoples' cameras and/or phones 'as evidence' when those people are lawfully engaged in recording police activity;

   b. Turning off dash cameras and/or body cameras when they are engaged in or unlawful and unconstitutional activity;

   c. Encouraging officers to engage in unlawful misconduct, then to write their victims tickets for disorderly conduct, then to not appear for trial knowing the charges will be dismissed. The purpose of officers doing this and the reason Detroit allows this unwritten policy to continue is to discourage people from questioning the police, encourage people to obey police officers' unlawful orders, discourage people from asserting their constitutional rights when talking to the police, and to encourage people to just be happy they are not being charged criminally after the charges are dismissed so that they don't file complaints or lawsuits against the officers.

    d. Turning off body cams, or leaving them off entirely, during unlawful police activity, which encourages police officers to engage in unlawful conduct knowing they are not being recorded;

    e. Refusing to provide medical treatment to those accused of assaulting the police, including Medics engaging in such refusal.

100.   As a proximate result of the unconstitutional acts of Defendant City of Detroit, Plaintiffs were harmed and suffer damages for their physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Nadia Rohr and Baylee Huffman, demand judgment and pray for the following relief, jointly and severally, against all Defendants:

    a. Declaratory judgment that Detroit Police Department's policies are unconstitutional;

    b. Full and fair compensatory damages in an amount to be determined by a jury;

    c. Punitive damages in an amount to be determined by a jury;

    d. Reasonable attorney's fees and the costs and disbursements of this action; and

    e. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiffs herby demand a trial by jury of all issues so triable, pursuant to Fed. R. Civ. Pr. 38(b).

>Respectfully Submitted,
>
>/s/ Ari Kresch_____
>Ari Kresch (P29593)
>1-800-LAW-FIRM, PLLC
>*Attorney for Plaintiff*
>26700 Lahser Road, Suite 401
>Southfield, MI 48033
>(800) 529-3476
>akresch@1800lawfirm.com
>
>
>/s/ Solomon M. Radner_____
>Solomon M. Radner, Esq. (P73653)
>Madeline M. Sinkovich (P82846)
>EXCOLO LAW, PLLC
>*Attorneys for Plaintiff*
>26700 Lahser Road, Suite 401
>Southfield, MI 48033
>(248) 291 9712
>sradner@excololaw.com
>msinkovich@excololaw.com

Dated: June 25, 2020